UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>Baker Hughes Energy Services LLC (f/k/a GE Oil & Gas, LLC, f/k/a GE Oil & Gas, Inc.), GE International Operations (Nigeria) Ltd., Pressure Control Systems Nigeria Ltd.,<br><br>       Petitioners,<br><br>    v.<br><br>International Engineering & Construction S.A., Greenville Liquified Natural Gas Co., Ltd. (f/k/a Greenville Oil & Gas Co., Ltd.),<br><br>       Respondents. | Civil Action No.  1:21-cv-01961 |

## PETITION TO CONFIRM ARBITRAL AWARD

Petitioners Baker Hughes Energy Services LLC, GE International Operations (Nigeria) Ltd., and Pressure Control Systems Nigeria Ltd. (collectively, the "Petitioners"), by and through their undersigned counsel, hereby petition this Court for an order pursuant to 9 U.S.C. § 207 (i) confirming and recognizing the final arbitral award (the "Award") rendered on October 30, 2020, in an arbitration between Petitioners and International Engineering & Construction S.A. and Greenville Liquefied Natural Gas Co., Ltd. (collectively, the "Respondents") pursuant to the Rules of the International Center for Dispute Resolution/American Arbitration Association ("ICDR/AAA Rules"); (ii) entering judgment in Petitioners' favor and against Respondents in the amount of the Award with pre- and post-award interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as this Court deems just and proper.  True and correct copies of the Award and the

parties' agreement to arbitrate are attached as **Exhibits A** and **D**, respectively, to the Declaration of Joshua S. Wan, dated March 5, 2021 ("Wan Decl.").

## Parties

1. Petitioners bring this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, to obtain recognition of the Award, a duly-rendered arbitration award issued in Petitioners' favor and against Respondents.

2. Petitioner Baker Hughes Energy Services LLC (f/k/a GE Oil & Gas, LLC, f/k/a GE Oil & Gas, Inc.) ("GEOG")[1] is a Delaware limited liability company that has its principal place of business in Houston, Texas.

3. Petitioners GE International Operations (Nigeria) Ltd. ("GE Nigeria"), and Pressure Control Systems Nigeria Ltd. ("PCSNL"), as successor to GE Nigeria under the Services Agreement between GE Nigeria and International Engineering & Construction S.A. ("IEC"), dated September 13, 2014, are companies that are incorporated in the Federal Republic of Nigeria and that have their principal places of business in Lagos, Nigeria.

4. Respondent IEC is a corporation that is incorporated, and has its principal place of business, in Luxembourg.

5. Respondent Greenville Liquefied Natural Gas Company, Ltd. (f/k/a Greenville Oil & Gas Company, Ltd.) ("Greenville") is a corporation that is incorporated in the Federal Republic

---

[1] For ease of reference, each of the Petitioner and Respondent entities is defined using the same abbreviation that is used in the Award.

of Nigeria and has its principal place of business in Abuja, Nigeria. Greenville is a wholly-owned indirect subsidiary of IEC.

## Jurisdiction and Venue

6. This Court has original subject matter jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking confirmation of an award rendered in an arbitration falling under the New York Convention.

7. The Court may exercise personal jurisdiction over Respondents because IEC agreed to resolve disputes with Petitioners by arbitration in New York, and in fact, both of the Respondents commenced, and fully participated in, an arbitration against Petitioners in New York, which resulted in an arbitral award that was made in this District. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) ("Against this background, Merrill Lynch argues that the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York. Merrill Lynch is correct.").

8. Venue is proper in this District pursuant to 9 U.S.C. § 204, because the parties' arbitration agreement and the enforcement of the arbitration award falls under the terms of the New York Convention, and the place of the arbitration was New York, New York.

## Summary of Dispute

9. This dispute pertains to Petitioners' supply, installation, and commissioning of equipment in connection with Respondents' efforts to build a liquified natural gas ("LNG") plant in Rumuji, Rivers State, Nigeria (the "Rumuji Plant"). Award, ¶ 285. The Rumuji Plant is owned and operated by Greenville, which is a wholly-owned indirect subsidiary of IEC. *Id.* ¶ 286. IEC planned to liquefy natural gas at the Rumuji Plant that it received via pipeline, and to deliver the LNG to customers to be used largely as a substitute for diesel fuel. *Id.* ¶ 287.

10. In particular, the dispute hinges on three contracts between Petitioners and IEC, each entered into on September 13, 2014: the Equipment Contract, the Services Agreement, and the Guarantee (collectively, the "Contracts"). Greenville was not a signatory to any of the Contracts. *Id.* ¶ 333.

  a. Under the Equipment Contract, GEOG agreed to supply equipment to IEC for two modularized, small-scale LNG production plants (otherwise known as "Trains") for use at the Rumuji Plant. *Id.* ¶¶ 285, 294. The two Trains were to be delivered to IEC by June 13, 2015, and September 13, 2015, respectively. Those dates were later amended by change order to June 24, 2015, and September 24, 2015, respectively. *Id.* ¶ 378.

  b. Under the Services Agreement, GE Nigeria agreed to provide on-site supervision of the installation, start-up, commissioning, and testing of the Trains, as well as training for IEC employees in the installation and maintenance of the Trains. *Id.* ¶ 285.

  c. Under the Guarantee, GEOG provided a guarantee to IEC of GE Nigeria's performance of the Services Agreement. *Id.*

11. Due to numerous delays on the Rumuji Plant project, GEOG completed delivery of the Trains' final modules on March 28, 2016. *Id.* ¶ 418. The parties disputed the causes of the delays in the delivery, installation, commissioning, and start-up of the Trains. *Id.* ¶¶ 296-97.

### The Arbitration

12. The Equipment Contract and Services Agreement contain nearly identical dispute resolution and arbitration clauses at Clause 20.1, which provide that:

> In the event of any dispute arising out of or in connection with the [Contract], the Parties agree to submit the matter to arbitration to be administered by the AAA under its Commercial Arbitration Rules before a board of three (3) persons consisting of one (1) arbitrator to be appointed by Seller, one (1) arbitrator by Buyer, and one (1) by the two so chosen, who will act in the capacity as procedural chairman. The seat, or legal place, of the arbitration shall be New

> York City, New York. The language to be used in the arbitration shall be English. Judgment on any award rendered by the arbitrators, or a majority thereof, may be entered by a court of competent jurisdiction.

Award, ¶ 12.

13.  Clause 7 of the Guarantee Agreement incorporates the Services Agreement's arbitration clause by reference:

> Any and all disputes arising under or relating to this Guarantee shall be subject to the Dispute Resolution Clause (the arbitration clause) as contained the Services Agreement, which is incorporated herein by reference, with the understanding that any references to Seller in that clause shall be considered a reference to Guarantor for purposes of this Guarantee, and Guarantor agrees, upon demand, to appear and participate in any arbitration commenced by Buyer against Services Provider, Guarantor not to be entitled to appoint a separate arbitrator.

*Id.* ¶ 13.

14.  In addition, pursuant to Clause 21.1 of the Equipment Contract, Clause 21.1 of the Services Contract, and Clause 8 of the Guarantee, the parties agreed that the Contracts would be governed by New York law. *Id.* ¶ 16.

15.  On July 31, 2018, IEC filed its Notice of Demand for and Commencement of Arbitration under Clause 20 of the Equipment Contract and Services Agreement as well as Clause 7 of the Guarantee on behalf of both itself and Greenville for alleged breaches of the Contracts, initially seeking over $75 million in damages — a quantum that Respondents increased to over $700 million by the time of the arbitration hearing. *Id.* ¶¶ 18, 845, 1084; Wan Decl., Ex. B. IEC brought several claims under the Equipment Contract: (i) for liquidated damages due to delayed delivery, (ii) for direct damages related to IEC's remediation of certain defects, and (iii) for

damages associated with the delayed entry into operation of the Trains.[2] Award, ¶ 361. In addition to their breach of contract claims, IEC separately asserted a claim for approximately $158 million in damages on the grounds that Petitioners fraudulently induced IEC to enter into the Contracts and that Petitioners committed fraud in misrepresenting their abilities during performance. *Id.* ¶ 857. Respondents further argued that, under New York law, they were entitled to lost profits damages far exceeding the liquidated damages clause in the Equipment Contract because of Petitioners' alleged gross negligence and willfulness. *Id.* ¶ 301.

16. On August 14, 2018, Petitioners filed counterclaims against IEC for breach of the Contracts, seeking approximately $36.4 million in damages — which was increased to $40.1 million by the time of the arbitration hearing. *Id.* ¶¶ 19, 1084; Wan Decl., Ex. C. Petitioners brought two claims under the Equipment Contract: (i) for reimbursements related to the purchase of spare parts, and (ii) for payments related to IEC's failure to pay contractually-agreed milestone payments. Award, ¶ 875. Petitioners also brought claims for services performed under the Services Agreement that IEC refused to pay. *Id.* ¶¶ 957, 967. Petitioners asserted that they had substantially performed under the Contracts by delivering both Trains and ensuring they were mechanically completed, but that Respondents had hindered and undermined those efforts by cannibalizing the Trains (*i.e.*, removing parts for use on other systems) and failing to preserve materials following delivery to the plant. *Id.* ¶ 877. In addition, Petitioners brought claims that they were entitled to restitution for additional works performed above and beyond what was required in the Contracts, *id.* ¶ 964, and that IEC had breached its confidentiality obligations by sharing Petitioners' intellectual property with unauthorized third parties, *id.* ¶ 1050.

---

[2] Although the breach of contract and fraud claims were asserted by IEC, Respondents sought throughout the arbitration to recover damages (including lost profits damages associated with the delayed operation of the Trains) allegedly incurred by Greenville, through IEC, by asserting that Greenville was a third-party beneficiary of the Equipment Contract and the Services Agreement. Award, ¶¶ 303-304, 326, 802.

17. As provided in the Contracts, the arbitration was seated in New York, New York, and proceeded in accordance with the ICDR/AAA Rules. Award, ¶¶ 14, 18, 19. Also in accordance with the Contracts, the arbitral tribunal ("Tribunal") applied New York law. *Id.* ¶ 16. The Tribunal consisted of Mr. Paul Saba (appointed by Respondents), Mr. Stefano Azzali (appointed by Petitioners), and Mr. David Arias (Presiding Arbitrator, nominated by Messrs. Saba and Azzali). *Id.* ¶¶ 6-10.

18. The Tribunal issued the Award on October 30, 2020. *See* Wan Decl., Ex. A.

19. The Tribunal found that Greenville had no contractual right to seek damages against Petitioners, concluding that "Greenville is not a third-party beneficiary to the Contracts and that it thus has no standing whatsoever under either the Equipment Contract or the Services Agreement." Award, ¶ 341. Although IEC and Greenville proceeded throughout the entire arbitration as though they were the same entity, repeatedly referring to themselves as "IEC/Greenville," and IEC further presented Greenville's damages claims as its own, *id*. ¶¶ 341, 532, the Tribunal found that "Greenville may not bring claims under the arbitration agreements in the Contracts by virtue of being a third-party beneficiary." *Id*. ¶ 340.

20. In addition, the Tribunal found that both Petitioners and IEC breached the Contracts. Specifically, the Tribunal found that GEOG breached the Equipment Contract by failing to deliver the Trains by the contractual delivery date. Award, ¶ 436. As a result, the Tribunal awarded IEC $4,750,000 in liquidated damages for delayed delivery as provided for in the Equipment Contract (5% of the contract price), as well as $1,375,130.89 for direct damages related to the remediation of defects, and $1,084,953.74 for direct damages associated with the delayed installation, commissioning, and operation of the Trains. *Id*. ¶¶ 437, 583, 590, 810. The Tribunal rejected the vast majority of Respondents' breach-of-contract damages claims because

they sought indirect and consequential damages that were explicitly excluded under the liquidated damages clause in the Equipment Contract. *Id.* ¶¶ 853-56. The Tribunal further found that Petitioners did not act with willfulness, fraudulent intent, or gross negligence, *id.* ¶¶ 767, 776, 863, and for the same reasons, dismissed Respondents' fraudulent inducement claims, *id.* ¶ 863.

21. The Tribunal also found that IEC breached the Equipment Contract and Services Agreement. In particular, the Tribunal concluded that IEC breached the Equipment Contract by failing to pay two milestone payments to which GEOG was entitled, and by failing to remit full payment for GEOG's purchase of spare parts. *Id.* ¶¶ 894, 899, 943. The Tribunal ordered IEC to pay $412,378 in damages for the spare parts, and $950,000 and $9,500,000, respectively, for the two milestone payments. *Id.* The Tribunal further found that IEC breached the Services Agreement by failing to pay a milestone payment to which GE Nigeria was entitled, and ordered IEC to pay $200,000 to GE Nigeria as a result. *Id.* ¶ 957.

22. In total, out of the over $700 million Respondents originally claimed, Respondents were awarded $7,210,084.63. Petitioners, on the other hand, were awarded $11,062,378. Applying the "costs-follow-the-event rule" and finding that IEC only prevailed with respect to 5% of the total amount in dispute, the Tribunal ordered IEC to pay 95% of the costs of the arbitration and Petitioners' costs. *Id.* ¶¶ 1085, 1089. Likewise, because Petitioners prevailed with respect to 95% of the amount in controversy, the Tribunal ordered Petitioners to pay 5% of the costs of the arbitration and Respondents' costs. *Id.* ¶¶ 1086, 1089. The total cost of the arbitration was $1,694,557.43, and Petitioners' and Respondents' costs were $5,292,945.01 and $14,261,373.11, respectively. *Id.* ¶ 1089.

23. The net effect of the above is an award to Petitioners in the amount of $8,891,506.96, which represents the sum of the following: (i) $3,852,293.37 (*i.e.*, the amounts

awarded to Petitioners less the amounts awarded to IEC); (ii) $721,134.49 (*i.e.*, 95% of the costs of arbitration — including fees, compensation, and expenses); and (iii) $4,318,079.10 (*i.e.*, 95% of Petitioners' legal costs and expenses less 5% of Respondent's legal costs and expenses). *See id.* at Section XV.

24.     The Tribunal also concluded that interest would accrue at the contractually agreed interest rate of 1% per month (not to exceed 12% per annum) — as per Clause 7.3 of both the Equipment Contract and the Services Agreement — on the awarded amounts. *Id.* ¶ 1090.

25.     Respondents have not made any payment to date on the Award. Wan Decl., ¶ 10.

26.     On January 27, 2021, IEC filed a petition to vacate the Award in the Supreme Court of the State of New York, New York County, Index No. 650627/2021. *Id.* ¶ 8.

**Count One**
**(Confirm Arbitration Award Pursuant to New York Convention and 9 U.S.C. §§ 201–209)**

27.     Petitioners repeat and reallege the allegations in Paragraphs 1 through 26 as if set forth fully herein.

28.     The Contracts set forth herein at Paragraphs 10, 12, and 13 constitute "an agreement in writing" within the meaning of Article II(2) of the New York Convention.

29.     The Contracts and the Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

30.     The Award is a nondomestic arbitral award in that it involved foreign parties and revolved around a dispute concerning an LNG construction project located entirely abroad.

31.     The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

32.     None of the grounds for refusal or deferral of the Award set forth in the New York Convention applies.

33. The Award is required to be recognized, and judgment entered thereon, pursuant to Article III of the New York Convention and 9 U.S.C. § 207.

WHEREFORE, Petitioners respectfully request that this Court:

a. Enter an order pursuant to 9 U.S.C. § 207 confirming the Award;

b. Enter a judgment based on the confirmed Award that Respondents are jointly and severally liable to Petitioners for $8,891,506.96, which is the sum of the following: (i) $3,852,293.37 (representing the amounts awarded to Petitioners less the amounts awarded to IEC); (ii) $721,134.49 (representing 95% of the costs of arbitration, including fees, compensation, and expenses); (iii) $4,318,079.10 (representing 95% of Petitioners' legal costs and expenses less 5% of Respondent's legal costs and expenses), plus simple interest until the date of satisfaction, at the rate of 1% per month (not to exceed 12% per annum) as awarded by the Tribunal[3];

c. Award Petitioners their reasonable attorneys' fees incurred for this proceeding; and

d. Award Petitioners such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 5, 2021

Respectfully submitted,

*/s/ David W. Kiefer*
David W. Kiefer
James E. Berger
Joshua S. Wan

---

[3] A simple interest calculation based on the amounts awarded by the Tribunal and the applicable dates shows that, as of the end of February 2021, Respondents owe Petitioners $1,981,023.55 in interest and Petitioners owe Respondents $216,302.54 in interest (a difference of $1,764,720.81 in favor of Petitioners). Wan Decl., ¶ 9.

                                       KING & SPALDING LLP
                                       1185 Avenue of the Americas
                                       New York, New York
                                       10036-4003
                                       Tel: (212) 556-2232
                                       Fax: (212) 556-2222
                                       *dkiefer*@kslaw.com
                                       *jberger*@kslaw.com
                                       *jwan*@kslaw.com

                                       *Attorneys for Petitioners*