UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
BAKER HUGHES ENERGY SERVICES LLC et al.,                          :
                                                                  :
                              Petitioners,                        :
                                                                  :                21-CV-1961 (JMF)
              -v-                                                 :
                                                                  :                OPINION AND ORDER
INTERNATIONAL ENGINEERING &                                       :
CONSTRUCTION S.A. et al.,                                         :
                                                                  :
                              Respondents.                        :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

 These consolidated cases arise from a hotly contested arbitration proceeding between

parties to an agreement to construct a liquified natural gas power plant in Nigeria: Baker Hughes

Energy Services LLC (formerly known as GE Oil & Gas, LLC) ("GEOG") and related entities

(collectively, "GE"), on the one hand, and International Engineering & Construction S.A. and its

subsidiary (together, "IEC"), on the other.  GE petitions to confirm the arbitration award; IEC

opposes GE's petition and cross-petitions to vacate the arbitral award on the ground that the

arbitrators manifestly disregarded the law and the plain language of the parties' contracts.  If the

Court were writing on a blank slate, some of IEC's arguments might have traction.  But given the

well-established deference owed to arbitrators, the Court concludes that IEC's arguments for

vacatur fall short.  Accordingly, and for the reasons stated below, the Court grants GE's petition

to confirm the arbitration award and denies IEC's cross-petition to vacate.

## BACKGROUND

 The following facts, drawn from the arbitration award and the parties' petitions, are

undisputed unless otherwise noted.

## A. The Parties' Contracts

IEC is a Luxembourg corporation that operates a liquified natural gas business in Nigeria through its subsidiary, Greenville Liquified Natural Gas Company, Ltd. ("Greenville").  ECF No. 4-1 ("Award") ¶¶ 2, 286; ECF No. 17-1 ("IEC Mem."), at 3.[1]  In 2014, IEC began negotiations with GEOG, a limited liability company incorporated in Delaware, and GE International Operations (Nigeria) Ltd. ("GE Nigeria"), a company incorporated in Nigeria, for the purchase and installation of two small-scale liquified natural gas plants in Rumuji, Rivers State, Nigeria (the "Rumuji Site").  Award ¶¶ 3, 285, 291-94.  IEC was a "newcomer" to the liquified natural gas business at the time and hoped to provide an alternative energy source for local customers who primarily relied on diesel fuel.  ECF No. 17 ("IEC Opp'n"), at 4; *see* Award ¶ 287.  On September 13, 2014, after inspecting a small-scale liquified natural gas plant that GEOG had built for another company, IEC entered into three agreements with GEOG and GE Nigeria: (1) the Equipment Contract, (2) the Services Agreement, and (3) the Guarantee (collectively, the "Contracts").  Award ¶¶ 285, 291-94; ECF No. 1 ("GE Pet.") ¶ 10; *see* ECF No. 17-2 ("Equipment Contract").[2]

Under the Equipment Contract, as later amended, GEOG agreed to supply IEC with two small-scale liquified natural gas production plants ("Plant 1" and "Plant 2," and, together, the "Plants")[3] — the first by June 24, 2015, and the second by September 24, 2015 — for use at the

---

[1]     Docket references are to 21-CV-1961 (JMF) unless otherwise specified.  Additionally, where relevant, references to page numbers in the Award are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

[2]     References to page numbers in the Equipment Contract are to the page numbers automatically generated by the Court's ECF system.

[3]     The arbitral tribunal (the "Tribunal") referred to these production plants as "Trains," *see* Award ¶ 285, but the Court will refer to them as "Plants" for the sake of clarity.

Rumuji Site.  Award ¶¶ 285, 295.  In exchange, IEC agreed to pay GEOG $95 million.  *Id.*
¶ 285; Equipment Contract 20.  IEC also agreed to a "Payment Schedule" pursuant to which it
would pay various percentages of the $95 million at specific "Milestones."  *Id.*  As relevant here,
the Payment Schedule tied 10% of the contract price (i.e., $9.5 million) to "Mechanical
Completion."  *Id.*  The Equipment Contract provided that "'Mechanical Completion' means that
a Plant has been mechanically, electrically and structurally installed on Site and connected, in
accordance with the Technical Documentation, but excluding (i) Commissioning, (ii) any minor
items which do not materially affect the operation or safety of the Plant and (iii) the introduction
of gas fluids and/or electricity" and that,"[i]n the event Seller is prevented from Mechanical
Completion due to reasons beyond its control, Mechanical Completion shall mean five (5)
months after the Delivery Date."  *Id.* at 7-8.

The Equipment Contract contains two other clauses of importance to this case.  First,
Clause 19.3 (the "Exculpatory Clause") expressly limits liability for breach of the contract to
direct damages, except in cases of "wilful [sic] misconduct."  Equipment Contract 38.
Specifically, it provides, in relevant part, that "except in a case of wilful [sic] misconduct, in no
event . . . shall either party or its subcontractors or suppliers be liable for loss of profit or
revenues, loss of use of the plant, parts or any associated equipment, . . . or for any special,
consequential, incidental, indirect, or exemplary damages."  *Id.*  Second, the Equipment Contract
contains a dispute resolution and arbitration clause, pursuant to which IEC and GEOG agreed to
submit any dispute "arising out of or in connection with the [Equipment Contract]" to
"arbitration to be administered" by the American Arbitration Association ("AAA") "under its
Commercial Arbitration Rules."  Award ¶ 12; Equipment Contract 38-39.  The arbitral tribunal
would be comprised of "three (3) persons consisting of one (1) arbitrator to be appointed by

Seller, one (1) arbitrator by Buyer, and one (1) by the two so chosen, who [would] act in the capacity as procedural chairman." *Id.* The contract designated New York, New York, as the "seat, or legal place, of the arbitration," *id.*, and specified that the agreement would be "governed by and construed in accordance with the laws of the state of New York, U.S.A., without regard to its conflict or choice of laws rules," Equipment Contract 39; *see* Award ¶ 16.

Pursuant to the Services Agreement, GE Nigeria agreed to provide on-site supervision of the installation, start-up, commissioning, and testing of the Plants at the Rumuji Site. Award ¶ 285. GE Nigeria also agreed to train IEC employees to ensure that the Plants were properly installed and able to function at their designed and warranted capacities. *Id.* The Services Agreement contains a dispute resolution and arbitration clause with nearly identical language to that in the Equipment Contract. *See* Award ¶ 12. Finally, pursuant to the Guarantee, GEOG guaranteed to IEC the performance of GE Nigeria's obligations under the Services Agreement. *Id.* ¶ 285. Clause 7 of the Guarantee Agreement incorporates by reference the Services Agreement's dispute resolution and arbitration clause. *Id.* ¶ 13. In both contracts, as in the Equipment Contract, the parties agreed that New York law would apply. *Id.* ¶ 16.

## B. The Parties' Dispute and Arbitration

GEOG failed to deliver the Plants by their contractual delivery deadlines. *Id.* ¶ 296. The Rumuji Site project also experienced subsequent delays in installation, commissioning, and start-up of the Plants. *Id.* ¶ 297. The parties disagreed — and continue to disagree — about the causes of the delays, as well as whether and when the Plants were ultimately delivered. *Id.* ¶¶ 296-97. As of July 2018, however, neither Plant had entered into operation. *See id.* ¶ 300.

On July 31, 2018, IEC filed a Notice of Demand for and Commencement of Arbitration under the Contracts on behalf of itself and Greenville. *Id.* ¶ 18. IEC initially sought

approximately $75 million in damages, *see* ECF No. 4-2 ("IEC Demand for Arb."), at 11,[4] but its

demand increased to $700 million by the time of the arbitration hearing, Award ¶ 845.  That

figure included claims under the Equipment Contract for "liquidated damages for delayed

delivery," "direct damages related to [IEC's] remediation of [certain] defects," and "damages

associated with the delayed entry into operation of the [Plants]."  *Id.* ¶ 361.  IEC further alleged

that, under New York law, it was entitled to indirect, lost profits damages "due to gross

negligence or willful misconduct, fraud, and/or breach of fiduciary duty."  *Id.* ¶ 301 (quoting IEC

Demand for Arb. 2).  In addition to these contract claims, IEC alleged that GEOG and the other

named respondents had fraudulently induced IEC to enter into the Contracts and had committed

fraud by misrepresenting their abilities during performance.  *Id.* ¶ 857.

On August 14, 2018, GEOG and GE Nigeria (along with the other entities named as

respondents, which are not relevant for present purposes) filed counterclaims against IEC for

breach of the Contracts.  *Id.* ¶ 19.  With respect to the Equipment Contract, GEOG and GE

Nigeria sought reimbursement for expenses related to the purchase of spare parts and damages

for IEC's failure to pay certain Milestone payments.  Award ¶ 875.  By the time of the arbitration

hearing, they sought $40.1 million in total damages.  ECF No. 4-3 ("GE Demand for Arb.") ¶ 3;

Award ¶ 1084.

The arbitration hearing took place in December 2019, followed by an additional hearing

in January 2020.  *Id.* ¶¶ 185, 240.  The Tribunal consisted of three arbitrators: Paul Saba,

---

[4]      References to page numbers in IEC's Demand for Arbitration are to the page numbers
automatically generated by the Court's ECF system.

appointed by IEC; Stefano Azzali. appointed by GE; and David Arias, the Presiding Arbitrator, nominated by Saba and Azzali. *Id.* ¶¶ 6-9.[5]

## C. The Award

On October 30, 2020, the Tribunal issued the Award. *See id.* at 1.[6]  As relevant here, the Tribunal held that *both* GEOG and IEC had breached the Equipment Contract.  In particular, the Tribunal found that GEOG had failed to deliver the Plants by their contractual delivery dates and awarded IEC $4.75 million in liquidated damages for the delays. *Id.* ¶¶ 436-37.  In addition, the Tribunal awarded IEC approximately $1.4 million for direct damages relating to the remediation of defects in the Plants and approximately $1.1 million for direct damages associated with the delayed installation, commission, and start-up of the Plants. *Id.* ¶¶ 579-80, 583, 590-91, 809-10. By contrast, the Tribunal rejected IEC's claims for indirect damages based on GEOG's late delivery of the Plants. *Id.* ¶¶ 753-54, 791.  The Tribunal concluded that the Exculpatory Clause in the Equipment Contract barred IEC's claims. *Id.* ¶ 791 (citing Clause 19.3 of the Equipment Contract).  In reaching that conclusion, the Tribunal noted that "willful misconduct and gross negligence [would] render the contractual limitations of liability inapplicable under New York law." *Id.* ¶ 753.  But the Tribunal concluded that rule did not apply because IEC had failed to demonstrate willful misconduct or gross negligence on the part of GEOG. *Id.* ¶¶ 753-91.  The

---

[5]     IEC casts aspersions on the impartiality of Arias in its briefing, *see* IEC Mem. 5 & nn. 1-2, but it "does not ask this Court to vacate the Award for arbitrator bias," IEC Opp'n 7.

[6]     The Tribunal applied New York law, *see* Award ¶ 16, which the parties agree applies here as well, *see* GE Pet. ¶ 14; IEC Mem. 4; *see also* Equipment Contract 39.

Tribunal likewise dismissed IEC's claims for fraudulent inducement and fraud during performance. *Id.* ¶¶ 863-65.

On the flip side, the Tribunal held that IEC had breached the Equipment Contract by failing to make two Milestone payments — the Plant Ready to Ship Milestone payment and the Mechanical Completion Milestone payment, *id.* ¶¶ 895-99, 942-43 — and by failing to remit full payment for GEOG's purchase of spare parts, *id.* ¶¶ 892-94. The Tribunal awarded GE $950,000 and $9.5 million in damages for the Plant Ready to Ship and Mechanical Completion Milestones respectively, and approximately $410,000 in damages for the spare parts. *Id.* ¶¶ 892-94, 898-99, 943.

In total, the Tribunal ordered GEOG to pay IEC $7,210,084.63 plus interest and ordered IEC to pay GEOG and GE Nigeria $11,062,378 plus interest. Award 238-39; *see also* ECF No. 15 ("GE Mem."), at 13. Applying the "costs-follow-the-event" rule, the Tribunal also ordered IEC to pay 95% of the costs of the arbitration, as well as GE's costs. Award ¶¶ 1087-89. The net result was that IEC was ordered to pay GE $8,891,506.96 plus interest. *Id.* at 238-39; *see also* GE Mem. 13.[7]

On January 27, 2021, IEC filed a petition to vacate the Award in New York state court. *See* Case No. 21-CV-2003, ECF No. 1. On March 3, 2021, GE initiated the instant action by filing its petition to confirm the Award in this Court. *See* GE Pet.[8] Five days later, IEC's state-

---

[7]      In addition, the Tribunal held that (1) Greenville was "not a third-party beneficiary to the Contracts and," thus, that it had "no standing whatsoever under either the Equipment Contract or the Services Agreement," Award ¶ 341; and (2) it had no jurisdiction over Baker Hughes Company and Baker Hughes Holdings LLC, which had also been named as respondents in the arbitration, *id.* ¶¶ 353-57. The parties do not challenge either determination here.

[8]      In Case No. 21-CV-1961 (JMF), which was first filed in this Court, there are three Petitioners — GE, GE Nigeria, and Pressure Control Systems Nigeria Ltd., the successor to GE

court case was removed to this Court.  *See* Case No. 21-CV-2003, ECF Nos. 1, 3.  Shortly

thereafter, the Court consolidated the two cases on consent.  *See* ECF No. 13.

## LEGAL STANDARDS

As the parties agree, the Federal Arbitration Act ("FAA") governs in this case (by way of

the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral

Awards, also known as the New York Convention).  *See* IEC Opp'n 26-27; GE Mem. 14, 16-17;

*see also LGC Holdings, Inc. v. Julius Klein Diamonds, LLC*, 238 F. Supp. 3d 452, 464-65

(S.D.N.Y. 2017).[9]  Under Section 9 of the FAA, a court must confirm an arbitral award unless

one of the statutory grounds for vacatur or modification is satisfied.  *See* 9 U.S.C. § 9; *see*

*also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011).

Section 10 of the FAA, in turn, establishes four bases to vacate an arbitral award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of
> them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them
> that a mutual, final, and definite award upon the subject matter submitted was not
> made.

---

Nigeria under the Services Agreement between GE Nigeria and IEC.  *See* GE Pet. ¶¶ 2-3.  IEC
and Greenville are the two Respondents in that case.  *See id.* ¶¶ 4-5.

[9]      At one point, IEC states that "motions to vacate are governed by the domestic law of the
state in which the award was rendered, *not* the New York Convention," IEC Opp'n 8, but later it
unequivocally concedes that the New York Convention and FAA apply, *see id.* at 26-27.  Any
doubt that the latter should be treated as IEC's operative view is resolved by the fact that GE
points out IEC's concession in its Reply, *see* GE Reply 7, and IEC fails to dispute the point or
otherwise respond in its Sur-Reply, *see* ECF No. 21 ("IEC Sur-Reply"), at 1-5.

9 U.S.C. § 10(a).  In addition, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007), or "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement," *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (cleaned up).  A court may vacate on these bases, however, only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (cleaned up); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) ("Our review under the doctrine of manifest disregard is severely limited. . . . It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." (internal quotation marks omitted)).

A party seeking to vacate an arbitral award for manifest disregard of the law "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it." *Duferco*, 333 F.3d at 389.  Accordingly, a court may vacate an award on such grounds only if it finds that (1) the law was "clear, and in fact explicitly applicable to the matter before the arbitrators"; (2) "the law was in fact improperly applied, leading to an erroneous outcome"; and (3) "the arbitrator must have known of [the law's] existence, and its applicability to the problem before him." *Id.* at 390.  Similarly, under the standards for manifest disregard of a contract, so long as "the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." *Schwartz*, 665 F.3d at 452 (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002)).  This "very limited review" is necessary to "avoid undermining the

twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (internal quotation marks omitted).

## DISCUSSION

IEC raises three grounds for vacatur of the Award.  First, IEC argues that the Tribunal manifestly disregarded New York law on gross negligence in rejecting IEC's claim for indirect damages.  Second, IEC contends that the Tribunal manifestly disregarded the plain language of the Equipment Contract in awarding GE the Mechanical Completion Milestone payment.  And, lastly, IEC argues that, under New York arbitral law, the Tribunal's decision to award GE the Mechanical Completion Milestone payment was irrational.  GE opposes these arguments for vacatur and seeks confirmation of the Award.  The Court will address each argument in turn.

### A.  Manifest Disregard of New York Law on Gross Negligence

The Court begins with IEC's argument that the Tribunal manifestly disregarded New York law on gross negligence "by refusing to consider the cumulative impact of GE's misconduct."  IEC Mem. 15.  According to IEC, New York law is clear that "the trier of fact *must* consider a cumulative claim [for gross negligence] if pleaded."  *Id.* at 14 (emphasis added).  The Tribunal disregarded this rule, IEC continues, by stating that it "would need to be pointed at *specific instances* in which GE[] acted with reckless disregard of, or with lack of substantial concern for, the rights of Claimants."  *Id.* at 15 (quoting Award ¶ 774 (emphasis added)).  IEC interprets this statement as a "refus[al] to consider whether [GE's] course of conduct could amount to gross negligence under the . . . cumulative gross negligence theory," and argues that the Tribunal therefore manifestly disregarded New York law.  IEC Opp'n 20.

The Court is not persuaded.  For starters, it is far from clear that the Tribunal did, in fact, fail to consider IEC's cumulative gross negligence theory.  The Tribunal expressly considered

the "sheer magnitude of issues with GE[]'s performance," citing *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012), and *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377 (1983) — the very cases on which IEC primarily relies here, *see* IEC Mem. 12; IEC Opp'n 11-14 — and concluded that the performance issues, taken together, did not "provide[] sufficient basis to establish" gross negligence.  Award ¶¶ 769-75 (internal quotation marks omitted); *see also id.* ¶ 772 ("The number of issues in the present case might be high but the Arbitral Tribunal is not persuaded that this conclusively establishes gross negligence, the threshold of which is very high.").  By itself, the fact that one can "plausibly" read the Tribunal's Award to do what IEC argues it failed to do dooms the argument for vacatur. *See, e.g.*, *Duferco*, 333 F.3d at 390 ("[W]here an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.").

But IEC's argument falls short for a more basic reason: New York law is not "clear" that the trier of fact *must* consider the cumulative effect of all conduct in determining whether a party was grossly negligent.  A legal rule is "clear" in this context if it is "well defined [and] explicit." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997).  "As long as there is more than one reasonable interpretation of the governing law, the law is not well-defined, explicit, and clearly applicable, and an arbitrator cannot be said to have manifestly disregarded the law." *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 71 (2d Cir. 2003), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *see also Duferco*, 333 F.3d at 390 ("[M]isapplication of an ambiguous law does not constitute manifest disregard.").  Here, the law is "not well-defined, explicit, and clearly applicable."  *Hoeft*, 343 F.3d at 71.

Indeed, at least one New York appellate court has explicitly "reject[ed the] contention that the cumulative effect of defendant's errors is sufficient to demonstrate gross negligence." *Tougher Industries, Inc., v. Dormitory Auth. of State*, 130 A.D.3d 1393, 1395-96 (3d Dep't N.Y. App. Div. 2015).  The *Tougher Industries* court noted that "[g]ross negligence cannot be demonstrated merely by accumulating a sufficient number of garden variety failures."  *Id.* at 1396 (internal quotation marks omitted); *see also id.* (concluding that because "each of the alleged errors ha[d] been shown to fall short of gross negligence," "regardless of the number of plaintiff's allegations, it ha[d] not met its burden to establish that any of defendant's actions went beyond ordinary negligence and satisfied the gross negligence standard" (internal quotation marks omitted)).  Meanwhile, in *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821 (1993) — a case cited by GE, but which IEC fails to address, *compare* ECF No. 18 ("GE Reply"), at 2-3, *with* ECF No. 21 ("IEC Sur-Reply"), at 2-3 — the New York Court of Appeals wrote that "'gross negligence' *differs in kind*, *not only degree*, from claims of ordinary negligence.  It is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Colnaghi*, 81 N.Y.2d at 823-24 (emphasis added) (internal quotation marks omitted).  These two cases, by themselves, give rise to a "reasonable interpretation of the governing law" that courts need not consider the cumulative effect of a party's conduct in determining whether that conduct was grossly negligent.  *Hoeft*, 343 F.3d at 71.

By contrast, IEC does not cite — and the Court has not found — any binding precedent "explicit[ly]" holding that a cumulative effect analysis is *required*.  *DiRussa*, 121 F.3d at 821. At most, the cases IEC cites stand for the proposition that a court *may* consider the cumulative effect of individual acts under New York law.  *See, e.g.*, *Bayerische Landesbank*, 692 F.3d at 65 (stating, in dictum, that one of the plaintiff's allegations, which was "insufficient by itself" to

sustain a claim of gross negligence, "c[ould] be aggregated with the other allegations"); *Kalisch-Jarcho*, 58 N.Y.2d at 385 (noting that the plaintiff's "claim against the city centered on the extraordinarily long delay, the immense number of drawing revisions," and "the failure to co-ordinate the contractors" and that, "[b]y attributing all of this to the misconduct of the city, . . . [the] proof, if credited [by the jury], would have to establish that the city's conduct amounted to gross negligence"); *see also, e.g.*, *Seiden v. Baker Tilly Hong Kong Ltd.*, No. 17-CV-02583 (LTS), 2019 WL 1316471, at *4 (S.D.N.Y. Mar. 22, 2019) ("Courts have characterized gross negligence as an act or acts that smack of intentional wrongdoing or a failure to exercise even slight care, where there were several acts of negligence with foreseeably severe cumulative effect." (internal quotation marks omitted)); *Internationale Nederlanden (U.S.) Cap. Corp. v. Bankers Tr. Co.*, 261 A.D.2d 117, 122 (1st Dep't N.Y. App. Div. 1999) ("[S]everal acts of negligence with foreseeably severe cumulative effect [can be] deemed gross negligence."). But to say that a court (or arbitral tribunal) *may* consider cumulative effects in the gross negligence analysis is not to say that it *must*, which is what IEC would have to establish to prevail here. *See Duferco*, 333 F.3d at 389-90. At best, the relevant case law is ambiguous, which is fatal to IEC's claim. *See, e.g.*, *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1217 (2d Cir. 2002) (holding that where the law is "unclear" an "arbitral decision cannot be said to have exhibited a manifest disregard of the law"); *T.Co Metals*, 592 F.3d at 341 (same).

## B. Manifest Disregard of the Equipment Contract

Next, IEC argues that the Tribunal "manifestly disregarded the [Equipment] Contract by awarding GE the Mechanical Completion Milestone payment" when it was *IEC* that "[m]echanically completed the Plants." IEC Opp'n 17; *see also* IEC Mem. 17-19. A party seeking to vacate an arbitral award for manifest disregard of the terms of the parties' relevant

agreement must overcome a substantial hurdle.  *See , e.g., Schwartz*, 665 F.3d at 452.  Indeed, an

"arbitrator's . . . contractual interpretation [is] not subject to judicial challenge."  *Westerbeke*,

304 F.3d at 214.  So long as "the arbitrator has provided even a barely colorable justification for

his or her interpretation of the contract, the award must stand." *Schwartz*, 665 F.3d at 452; *see*

*also id.* ("[I]nterpretation of the contract terms is within the province of the arbitrator and will

not be overruled simply because we disagree with that interpretation." (cleaned up)); *Weiss v.*

*Sallie Mae, Inc.*, 939 F.3d 105, 110 (2d Cir. 2019) (same); *cf. Oxford Health Plans v. Sutter*, 569

U.S. 564, 569 (2013) (explaining that the Court's inquiry under Section 10(a)(4) of the FAA, a

similar statutory provision, is confined to the narrow question of "whether the arbitrator (even

arguably) interpreted the parties' contract, not whether he got its meaning right or wrong");

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (holding

that, in the context of a Section 10(b)(4) challenge, "as long as the arbitrator is even arguably

construing or applying the contract . . . , a court's conviction that the arbitrator has committed

serious error in resolving the disputed issue does not suffice to overturn his decision" (internal

quotation marks omitted)).

IEC argues it has met this steep burden because the Tribunal ignored "the plain language

of the contract" by concluding that IEC owed GE the Mechanical Completion Milestone

payment when "*IEC* mechanically completed the plants."  IEC Opp'n 19 (emphasis added); *see*

*also* IEC Mem. 17-19; IEC Sur-Reply 4-5.  According to IEC, this decision ignored Clause 7.1

of the Equipment Contract, which provides that the "Contract Price" of $95 million is "for the

*performance of Seller's obligations* under this Agreement."  IEC Opp'n 18 (quoting Equipment

Contract 20 (emphasis added)).  Clause 7.1 also states that "Buyer hereby agrees to pay the

Contract Price to Seller in accordance with the [Payment Schedule], in consideration for the

performance by Seller of all its obligations under the Agreement."  Equipment Contract 20.  In making this argument, IEC concedes it cannot "challeng[e] the Tribunal's interpretation of a contract," but nevertheless contends vacatur is warranted because the Tribunal "disregard[ed] . . . the plain and unambiguous language of the Equipment Contract."  IEC Sur-Reply 4.

The Court is not convinced.  Citing to the very same contractual provisions that IEC relies on, the Tribunal concluded that "the payment due for [the Mechanical Completion] Milestone is akin to a 10% installment of the purchase price, i.e., it is consideration for 10% of the value of each of the [Plants] sold and delivered."  Award ¶ 941.  As such, the Tribunal reasoned, "the payment does not serve the purpose of remunerating or crediting [GE] for any contribution regarding the installation and connection works conducive to Mechanical Completion."  *Id.* ¶ 941.  Instead, once Mechanical Completion for both Plants] was reached, IEC owed GE the Mechanical Completion Milestone payment, *regardless* of whether it was GE that achieved the milestone.  *Id.*; *see also id.* ("[T]he fact that [GE] may not have contributed to Mechanical Completion or that its failure to remediate defects/non-conformities may have been disruptive to IEC's works towards Mechanical Completion does not cancel [GE's] right to eventually receive full payment for the [Plants] sold and delivered.").

The Tribunal's interpretation is supported by the Equipment Contract's definitions of "Mechanical Completion" and "Milestone."  Significantly, Mechanical Completion is defined primarily in passive terms: "'Mechanical Completion' means that a Plant *has been* mechanically, electrically and structurally installed on Site and connected in accordance with the Technical Documentation . . . ."  Equipment Contract 7 (emphasis added).  Likewise, "Milestone" is defined as "the event or group of events *to be achieved* in order to entitle Seller to invoice the

payment as listed in the Payment Schedule." *Id.* at 8 (emphasis added). [10]  Whether or not these provisions mandated the Tribunal's interpretation of the parties' agreement, they certainly provide a "colorable justification" for it.  *Schwartz*, 665 F.3d at 452.  That is enough.

Contrary to IEC's claims, the Tribunal's interpretation does not conflict with the "plain and unambiguous language" of Clause 7.1.  IEC Sur-Reply 4.  To be sure, Clause 7.1 states that the full $95 million "Contract Price" is in consideration "for the performance of Seller's [i.e., GE's] obligations under this Agreement."  Equipment Contract 20.  But it does not necessarily follow that the $9.5 million partial payment tied to the *Mechanical Completion Milestone* is contingent on the work being done exclusively by GE.  Indeed, Clause 7.1 says nothing about what must happen for GE to become entitled to the $9.5 million Mechanical Completion Milestone payment; GE's entitlement is a function, instead, of the definitions of "Mechanical Completion" and "Milestone" discussed above.  *Compare* Equipment Contract 20, *with id.* at 8.  Thus, Clause 7.1 does not foreclose the Tribunal's conclusion that IEC owed GE the Mechanical Completion Milestone payment once the milestone itself was achieved, without regard for who was responsible for the achievement.  *See* Award ¶¶ 941-42.

IEC's other arguments to the contrary also fall short.  IEC contends that Clause 7.6 of the Equipment Contract and the second sentence of the definition of Mechanical Completion "make[] clear that GE is responsible for achieving the Milestones, not IEC."  IEC Opp'n 23.  The former provides that "Buyer may withhold payment on an invoice or a portion thereof in the event of a *failure of Seller to perform the Milestone* related to the withheld payment in

---

[10]     To be sure, the Tribunal did not explicitly cite to the definition of "Milestone" in its analysis.  But the Court can and does infer that it also relied on that provision.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." (internal quotation marks omitted)).

accordance with the provisions of this Agreement." Equipment Contract 22 (emphasis added).

And the latter states that, "[i]n the event *Seller is prevented from Mechanical Completion* due to

reasons beyond its control, Mechanical Completion shall mean five (5) months after the Delivery

Date." *Id.* at 8 (emphasis added). Read in isolation, these provisions would indeed support

IEC's argument that the Seller (i.e., GE) was responsible for achieving the Mechanical

Completion Milestone. But when read together with the contractual provisions discussed above,

as they must be, *see, e.g.*, *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ("[A] contract

should be read as a whole, and every part will be interpreted with reference to the whole."), they

do not dictate that result. At most, the result is ambiguity with respect to whether GE was

required achieve the Mechanical Completion Milestone in order to become entitled to the

associated payment. That is not enough to vacate the Award.

Moreover, the Tribunal explicitly addressed both Clause 7.6 of the Equipment Contract

and the second sentence of the definition of Mechanical Completion in explaining its conclusion:

> It is true that . . . IEC is entitled to withhold payment for this Milestone for as
> long as Mechanical Completion is not reached due to reasons within [GE's]
> control (*Clause 7.6* in conjunction with the *definition of Mechanical Completion*
> *in Clause 1* of the Equipment Contract). This withholding right may well be
> meant to serve as an incentive for [GE] to swiftly remediate any defects/non-
> conformities that may stand in the way of Mechanical Completion. However, this
> does not mean that the milestone payment for Mechanical Completion constitutes
> *consideration* for a possible contribution by [GE] towards Mechanical
> Completion. Therefore, the fact that [GE] may not have contributed to
> Mechanical Completion or that its failure to remediate defects/non-conformities
> may have been disruptive to IEC's works towards Mechanical Completion does
> not cancel [GE's] right to eventually receive full payment for the [Plants] sold and
> delivered.

Award ¶ 941 (first two emphases added). The Tribunal also noted that "the Equipment

Contract[] makes other remedies available to IEC to specifically address [GE's] failure to

remediate defects/non-conformities, namely those in Clause 17.4 of the Equipment Contract."

*Id.* These interpretations and justifications are certainly "colorable." *Schwartz*, 665 F.3d at 452.

17

It follows that the Court may not "overrule[]" them merely because IEC offers colorable interpretations and justifications of its own. *Id.*; *see also, e.g.*, *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) (rejecting an "argument that the arbitrator manifestly disregarded the agreement" because the petitioner "merely t[ook] issue with the arbitrator's well-reasoned interpretations of those provisions, and simply offers its own contrary interpretations").

## C.  Arguments Under New York Arbitral Law

Finally, IEC argues that, under Section 7511(b)(iii) of the New York Civil Practice Law and Rules ("CPLR"), the Court may vacate the Award on the ground that the Tribunal's interpretation of the Contracts was "completely irrational."  IEC Mem. 19 (citing *Kudler v. Truffelman*, 93 A.D.3d 549, 550 (1st Dep't N.Y. App. Div. 2012); *Sweeney v. Herman Mgmt., Inc.*, 85 A.D.2d 34, 39 (1st Dep't N.Y. App. Div. 1982)).  That may or may not be true, *see, e.g.*, GE Mem. 16-17, 27-28 (arguing that the FAA provides the sole potential grounds for vacatur); *see also, e.g.*, *LGC Holdings*, 238 F. Supp. 3d at 466 (rejecting the argument that "New York law rather than the FAA" should govern enforcement of an arbitral award because "the parties . . . did not contractually agree to apply New York's vacatur standards to their arbitration"), but the Court need not decide because, as GE points out, IEC's argument under the CPLR duplicates its argument that the Award should be vacated for manifest disregard of the contract.  *See* GE Reply 8 n.3.  IEC has not identified, and the Court has not found, a difference between the CPLR's "completely irrational" inquiry and the FAA's "manifest disregard" inquiry that would lead to a different result under New York law.  Under the CPLR, a court may vacate an arbitral award where "the arbitrator exceeds his power [by] giv[ing] a completely irrational construction to an agreement, thereby effectively creating a new contract between the parties."  *Sweeney*, 85

A.D.2d at 38.  But, as discussed in detail above, the Tribunal's interpretation of the contract was not so irrational that it "effectively rewr[ote]" the agreement.  *Kudler*, 93 A.D.3d at 550.

## CONCLUSION

In short, due to the strong deference owed to the decisions of arbitrators, the Court is compelled to reject IEC's arguments and confirm the Award.  Accordingly, GE's petition to confirm the Award is GRANTED, and IEC's cross-petition to vacate the Award is DENIED.

The Clerk of Court is directed to enter judgment consistent with this Opinion and Order and to close these consolidated cases.

SO ORDERED.

Dated: November 16, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge